# Reading *v.* United Traction Co., Appellant.

*Street railways—Paving streets—Municipalities.*

Where a street railway company has with its tracks occupied streets of a city with the latter's consent, and on condition (*a*) that it pave its right of way and keep the same in good repair, or (*b*) that it pave its right of way in a specified manner superior to the then construction of the streets and keep said paving in good repair, the city may upon adoption and upon notice to the company of the adoption of an improved pavement for the rest of the street, with which the original pavement of the right of way is incongruous and practically incompatible, require the company, the pavement on its right of way being in fact out of repair, to replace the same with a pavement reasonably corresponding with the street pavement adopted.

Argued March 3, 1902. Appeal, No. 99, Jan. T., 1901, by

defendant, from judgment of C. P. Berks Co., May T., 1898, No. 122, on verdict for plaintiff in case of City of Reading *v.* United Traction Company.   Before McCollum, C. J., Dean, Fell, Mestrezat and Potter, JJ.   Affirmed.

Assumpsit to recover the cost of paving a street.   Before Endlich, J.

At the trial the jury returned a verdict in favor of the plaintiff for the sum of $10,328.68, subject to the question of law reserved whether there was any evidence which entitled the plaintiff to maintain the action.

On a rule to show cause why judgment should not be entered for defendant non obstante veredicto, Endlich, J., filed the following opinion :

The principal question raised by this rule is this :

Where a street railway company has with its tracks occupied streets of a city, with its consent and on condition (*a*) that it pave its right of way and keep the same in good repair, or (*b*) that it pave said right of way in a specified manner superior to the then construction of the streets and keep said paving in good repair,—can the city, upon adoption and upon notice to the company of the adoption of an improved pavement for the rest of the street, with which the original pavement of the right of way is incongruous and practically incompatible, require the company, the pavement upon its right of way being in fact out of repair, to replace the same with a pavement reasonably corresponding with the street pavement adopted ?

It will at once be seen that a comprehensive and conclusive answer to this question is not furnished by the decisions in Philadelphia v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444, and Philadelphia v. Hestonville, etc., Pass. R. R. Co., 177 Pa. 371, which involved the liability of street railway companies to reconstruct the entire streets over which they had been granted a right of way on condition of keeping them in repair, nor by those in Norristown v. Pass. Ry. Co., 148 Pa. 87, and Philadelphia v. City Pass. Ry. Co., 177 Pa. 379, in which there was no pretense that the company's right of way was out of repair, but a claim on the part of the municipality that, regardless of that question, it could insist upon a reconstruction by the company whenever

a new style of street pavement was adopted, and with the identical material used therein.   Like distinctions are to be drawn between the present case and those passed upon in the decisions of other jurisdictions cited by defendant's counsel.   Of one of them, Gilmore v. Utica, 121 N. Y. 561; 24 N. E. Repr. 1009, it may be remarked that the point there decided was simply that, if the municipality made no use of its mere discretion under the law to compel a street railway company to bear a share of the expense of repaving a street in part occupied by it, the owner of a property along the street had no standing to question the validity of a municipal assessment laid upon properties fronting thereon to meet the entire cost of the improvement. On the other hand, the applicability of the main ruling in McKeesport v. Pass. Ry. Co., 158 Pa. 447, where the ordinance consenting to the company's occupation of the streets required it to keep its right of way in good repair and also, in the event of change of grade or improvement of the streets, to conform thereto, depends upon the question, not expressly passed upon in that decision, whether the ordinance is or is not simply declaratory of the duty of railway companies in such circumstances.

When, looking beyond the decisions referred to, we search for principles to guide us to a conclusion, we find first of all that it is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect: 2 Wood, Railroads, pp. 758, 760; Pierce, Railroads, p. 245; Mills, Em. Dom. sec. 198; Elliott, Roads and Streets, p. 591; Worster v. R. R. Co., 50 N. Y. 203; North Hudson County Ry. Co. v. Hoboken, 41 N. J. L. 71; Ry. Co. v. State, 87 Tenn. 746.   As illustrating the acceptance of this principle in Pennsylvania, it is only needful to refer to Phœnixville v. Iron Co., 45 Pa. 135, R. R. Co. v. Irwin Boro., 85 Pa. 336 and Harrisburg v. Pass. Ry. Co., 1 Pears. 298.   But in the next place, the duty to keep in repair involves something more than the mere preservation of the condition in which the street was when first occupied by the railway, or in which the right of way was then put by the company.   In Phœnixville v. Iron Co., 45 Pa. 135, the duty to repair is declared to be a continu-

ing one, and as such it is held, in Burritt v. New Haven, 42 Conn. 174, State v. Ry. Co., 35 Minn. 131, 26 N. W. Repr. 3, and State v. Ry. Co., 39 Pa. 219, to embrace a liability to make such subsequent alterations and improvements (e. g., changing a grade to an overhead crossing), as from time to time may become necessary for the convenience of the public in the use of the streets.    Succinctly and most aptly put by Mr. Justice MITCHELL, in Philadelphia v. St. Pass. Ry. Co., 169 Pa. 269 :

" The duty to repair, where it exists, extends to the replacement of an old pavement by a new one of different and improved kind . . . . the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions."

Understanding this utterance as made in view of the decision in Norristown v. Pass. Ry. Co., and as perfectly consistent with that in Philadelphia v. City Pass. Ry. Co., supra, it would appear that the company's duty to repair does not exist—in the sense that it calls for no action on the company's part—while the condition of the pavement as originally required on that portion of the street occupied by the right of way is such that it needs no mending, and that in such case the city has no right to call upon the company to replace it with a different and better one, i. e., to engage in what then would be more properly termed reconstruction than repair.    Accordingly, in Elliott, Roads and Streets, pp. 594, 595, the doctrine is laid down as the one deducible from the authorities, that a railway company, in respect to the condition of its right of way upon the streets of a city, is bound to repair but not to improve, but that the duty of making repairs requires them to be made in such manner and with such materials as will correspond with the general condition of the street at the time the repairs are needed ; so that, whilst the company is not compellable to tear up a sound pavement of antiquated style and replace it with a different and better one, yet if a necessity for repairing the pavement within the right of way arises after an improved pavement has been laid in the remainder of the street by the city, the latter may require the company reasonably to confirm with such improved pavement. And it is pertinently observed at p. 594.

" If it be true that the company is not bound under the continuing duty to make repairs to correspond with the improved

or changed condition of the street, then the practical result would be that it would be entirely released from its duty, since it is quite clear that repairs of any other character would be without value or service to the public."

Nor can it require any elaboration to show that the company's duty, in repairing its defective pavement, to conform to the improved street pavement exists equally whether, when the occasion for repairs arises, the street pavement be already fully laid, or whether the work of laying it be only begun or determined upon by the city, provided, in the latter case, that the company have notice of the fact. Of course, all this refers solely to the company's right of way, its duty to repair which exists with or without contract, and with or without express legislative declaration, that is to say, exists as a common-law duty. No such duty is imposed upon it as to the remainder of the street. Where as to that any exists, it must be by virtue of statutory imposition or of contract, the precise terms of either, creating it, necessarily furnishing the only measure for the extent of it.

It is, however, contended that any common-law duty, such as has been spoken of concerning the conformity of repairs required from the company to changes in its general street pavement, is superseded by the specification, in an ordinance consenting to the occupation of a street, of a particular pavement upon the right of way granted and the requirement that it be kept in repair, and that the enactment and acceptance of such an ordinance preclude the city from calling upon the company thereafter to put down a different and more expensive pavement. That the enactment of such an ordinance and its acceptance and subsequent action thereunder by the railway company establish a contract between the latter and the city, is admitted. But every contract, as is well known, must be construed and understood in the light of the circumstances under which it was made: Callen v. Hilty, 14 Pa. 286, 288; Berridge v. Glassey, 112 Pa. 442, 455; Machine Co. v. Ins. Co., 173 Pa. 53, 57, and with a view to effectuating the objects the parties meant to attain: Allison's App., 77 Pa. 221, 226; Richardson v. Clements, 89 Pa. 503, 505, and in its effect is limited to these: Doster v. Zinc Co., 140 Pa. 147, 150, 151. When this railway was constructed, the streets of Reading were mac-

ademized.   The requirement to pave with cobblestones was intended to exact from the company something more, not something less, than a reasonable correspondence with the rest of the street.   There was no thought of relieving the company from any obligations devolving upon it under the law, but to impose upon it a duty greater than, in view of the then condition of the streets, the law would have imposed upon it.   Indeed, of the contention that it may have been intended to settle, as between the city and the company, that the maintenance of a cobble stone pavement should forever be the measure of the latter's service in return for the grant of the former's streets, it may be said in the language of the Supreme Court in Philadelphia v. Ridge Ave. Pass. Ry. Co., supra, at p. 472:

"It cannot be entertained for a moment.   It was never contemplated that the railway company would continue to exist and perform its corporate functions in a cobblestone age.   It was called into being with a view of progress."

Certainly no contract was made between the city and the company designed to stand as an obstacle in the path of progress, corporate or municipal.   In no event could the effect insisted upon by defendant's counsel be given to the ordinance in question, in the absence of express language surrendering on the part of the city the right to exact from the company the performance of the continuing duty imposed upon it by common law : Johnson v. Philadelphia, 60 Pa. 445, 452.

Neither is there any room for doubting that performance of the duties devolving upon the original companies which constructed these railways and obtained the city's consent to the occupation of its streets can properly be exacted from the lessee of the former operating the railway : Philadelphia v. City Pass. Ry. Co., supra, at p. 381; Mullen v. Traction Co., 20 W. N. C. 203.

It thus seems to be clear (1) that a railway company occupying streets in a city is at common law liable to repair the space covered by its right of way thereon, when out of repair, in a manner corresponding with the pavement of the rest of the street; (2) that this liability was not taken away or in any degree curtailed by the terms of the ordinance by virtue of which the railway companies under whom the defendant operates the roads as lessee, occupied the streets here in question, and

(3) that the duties imposed upon the original companies in this respect devolved upon and are enforceable against the defendant company as such lessee. That being so, the liability of the defendant in this case is precisely the same as that which rested upon the appellant in McKeesport v. Pass. Ry. Co., supra, under the ordinance there produced, which therefore must be regarded as simply declaratory of the company's common-law liability. Hence the decision in that case virtually settles the rule to be applied in this. And when it is further remembered that the notice given by the city of Reading to the defendant was substantially like that given by the borough of McKeesport to the defendant in that case, and that the verdict here, based upon abundant evidence, establishes all the essential facts there shown, viz : that an improved street pavement upon those portions of the streets outside of defendant's right of way had been determined upon by the city, that the pavement upon said right of way was in a state of dilapidation so that it was the duty of the company presently to repair, that defendant was notified of the adoption of the new street pavement and of the fact that the city was about to lay it, and was required by that notice to conform thereto, that it refused so to do, that the city then proceeded to do the work for it, that a continuance of the previous cobblestone pavement was incompatible with the improved street pavement, that the pavement put down upon the company's right of way was a reasonably proper and economical one in correspondence with the paving of the remainder of the. street, and that the work was done by the city at the same cost per unit as the paving upon the remainder of the street, there seems to be no question left upon this main branch of the case which is not fully disposed of by the express or implied rulings in that decision. It may be added, however, that this case is stronger in favor of the plaintiff than the McKeesport case in this, that by the bargain between the city and the paving contractor, not only was the work done more cheaply than the company could have procured it to be done under an independent contract, but the repairing of the entire street, including the right of way, was assumed for a period of ten years by the contractor, thereby easing the defendant, for that length of time, of a burden which confessedly lay upon it.

On the remaining branch of the case, the claim for depress-

ing a portion of the defendant's track to conform to a change in the grade of the street, little need be said. Section 10, Act of April 3, 1873, P. L. of 1874, page 348, the charter of the company under which the defendant operates this part of the railway, is as follows :

" The councils of Reading shall have the power to establish such regulations in regard to said railway as may be required for the purpose of paving, repairing, grading . . . . in and along the streets in said city used by said company, and to prevent obstructions thereon."

What was said by Mr. Justice STRONG, in Phœnixville v. Iron Co., supra, at pp. 139, 140, is peculiarly applicable to the construction of this clause :

" It is a fair presumption that the legislature never intended to give away public rights, or to impose burdens upon any local community, without compensation."

If by the grant of power to lay this track upon a street of the city of Reading, the power of the latter was taken away to require it to be depressed by the company, and at its expense, when a change of the grade of the street became necessary, then such depression could only be made, if at all, at the expense of the city; that is to say, in the language of the decision just quoted, " a burden has been imposed upon the plaintiffs . . . . solely for the private advantage of those who are using the railway," obviously the above clause was designed to guard explicitly against such an absurd and unjust result, and to render it clear that necessary changes, without which the presence of railway tracks upon a street would become an obstruction of it and a public nuisance, might by the city at all times be required to be made at the expense of the company.

As to the measure of the recovery in this case, if that is not covered by the decision in McKeesport v. Pass. Ry. Co., supra, as the right of action certainly is, it may be added that it was held in New York v. R. R. Co., 102 N. Y. 572; 7 N. E. Repr. 905, that where a city has done work upon a railway company's right of way, which the company was bound but neglected to do, and has proceeded in the usual way and no fraud is shown, nor any facts to impeach the reasonableness of the account, the sum actually expended in the work is prima facie the amount

which it is entitled to recover, and an instruction directing a verdict therefor is justified. Substantially the same rule, with the addition of interest, is approved in R. R. Co. v. Duquesne Boro., 46 Pa. 223.

The conclusion is that the case was one for the jury's determination upon the lines laid down with substantial accuracy in the charge, and that no warrant has been shown for the entry of a judgment contrary to the verdict.

The rule to show cause is discharged.

*Error assigned* among others was in entering judgment on the verdict.

*Richmond L. Jones*, for appellant, cited: Western Paving, etc., Co. v. Citizens' St. R. R. Co., 128 Ind. 525; 26 N. E. Repr. 188; Gilmore v. City of Utica, 121 N. Y. 561; 24 N. E. Repr. 1009; Phila. v. Hestonville, etc., R. R. Co., 177 Pa. 376; Booth on Street Railways, 350; Chicago v. Sheldon, 76 U. S. 50; Coast Line R. R. Co. v. Savannah, 30 Fed. Repr. 646; Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87.

*Isaac Hiester*, with him *William J. Rourke*, city solicitor, for appellee, cited: Penna. R. R. Co. v. Irwin Borough, 85 Pa. 336; Burritt v. New Haven, 42 Conn. 174; North Hudson County Ry. Co. v. Hoboken, 41 N. J. L. 71; Worcester v. Forty Second St., etc., R. R. Co., 50 N. Y. 203; Memphis, etc., Ry. Co. v. State, 87 Tenn. 746; Laredo Electric Ry. Co. v. Hamilton, 23 Tex. Civ. App. 480; 56 S. W. Repr. 998; Harrisburg v. Pass. Ry. Co., 1 Pearson, 298; McKeesport v. Pass. Ry. Co., 158 Pa. 447; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98; 11 Sup. Ct. Repr. 226; Lincoln St. Ry. Co. v. City of Lincoln, 84 N. W. Repr. 802: Mullen v. Philadelphia Trac. Co., 20 W. N. C. 203; Philadelphia v. Philadelphia City Pass. Ry. Co., 177 Pa. 379.

PER CURIAM, May 19, 1902 :

The judgment in this case is affirmed on the opinion of Judge ENDLICH.